IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEXA NIEVES, | : | |
|---|---|---|
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 08-5178 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

TIMOTHY R. RICE　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　January 29, 2010
U.S. MAGISTRATE JUDGE

　　Resolution of this case depends on whether the Administrative Law Judge ("ALJ") appropriately considered evidence of Alexa Nieves' mental impairments in rejecting her application for Supplemental Security Income ("SSI"). Nieves seeks judicial review of the ALJ decision, alleging it is not supported by substantial evidence because the ALJ failed to adequately consider Nieves' psychiatric treatment records, including Global Assessment of Functioning ("GAF") scores.[1] Therefore, Nieves alleges the ALJ failed to: (1) properly evaluate whether Nieves met a listed impairment; (2) properly determine Nieves' Residual Functional Capacity[2] ("RFC"); (3) properly evaluate Nieves' credibility; and (4) incorporate all of Nieves' credibly

---

　　[1] GAF scores (on a 100-point scale) reflect the mental health specialist's assessment on a particular day of the severity of a patient's mental health, and are necessarily based on the patient's state of mind and self-reported symptoms. Diagnostic and Statistical Manual of Mental Disorders IV-TR 34 (4th ed. Am. Psychiatric Assoc. 2000) [hereinafter DSM IV-TR].

　　[2] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

established limitations in his hypothetical question to the vocational expert. See Plaintiff's Brief in Support of Summary Judgment at 5-21, Nieves v. Astrue, 08-5178 (E.D. Pa. Aug. 24, 2009) [hereinafter Plaintiff's Brief].

After careful review, I find the ALJ's decision was not supported by substantial evidence because the ALJ failed to reconcile the opinion of Nieves' treating physician that she suffered from major depressive disorder, anxiety, and a GAF score of 50.[3] See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009); Colon v. Barnhart, 424 F. Supp. 2d 805, 807, 815 (E.D. Pa. 2006) (Baylson, J.). Accordingly, I respectfully recommend Nieves' request for review be GRANTED and the matter be REMANDED for further proceedings consistent with this Report and Recommendation.

---

[3] A GAF score of 41 through 50 indicates serious symptoms, such as suicidal ideation, or any serious impairment in occupational, school, or social functioning, i.e., having no friends and inability to keep a job. DSM IV-TR at 34. A GAF score of 51 through 60 indicates moderate symptoms, such as circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning, i.e., few friends or conflict with peers or coworkers. Id. A GAF score of 50 is on the borderline between serious and moderate symptoms. Dougherty v. Barnhart, 2006 WL 2433792, at *3 n.2 (E.D. Pa. Aug. 21, 2006) (Baylson, J.).

BACKGROUND AND FACTUAL HISTORY[4]

Nieves was 31 at the time of the ALJ's decision[5] and has a high school education. See R. 77, 94. She had past relevant work experience as a merchandise stocker at a plunger factory. R. 32-33, 90-91. She lives with her daughter and son, who were 11 and 9 years old at the time of the ALJ's decision. R. 78.

In 1993, Nieves was in a bike accident, which resulted in injuries to her neck, back, right knee, and right foot. R. 145. During her treatment for the accident, Nieves' physician, Dr. Uma Kamineni, noted Nieves looked depressed, nervous, and under great anxiety and stress, and prescribed her Xanax.[6] R. 139, 144.

On December 8, 2006, Nieves sought SSI, alleging disability as of February 1, 2004. R. 85. Nieves originally claimed disability due to a leg and back condition, hearing impairment, and cerebral abscess.[7] R. 89. A field interview was conducted on December 14, 2006. R. 85-88. In

---

[4] Because Nieves does not challenge the ALJ's finding regarding her physical impairments, I need not summarize medical evidence regarding her physical condition. See Colon v. Barnhart, 424 F. Supp. 2d 805, 807 (E.D. Pa. 2006) (Baylson, J.)

[5] Nieves is considered a "younger person" under the Commissioner's regulations, which define a younger individual as a person under age 50. See 20 C.F.R. § 416.963(c). Age is considered one of the relevant factors in determining whether a claimant can adjust to other work in the national economy. Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. § 416.963(a); however, a younger person's age is generally not considered to seriously impact the ability to adjust to other work, 20 C.F.R. § 416.963(c).

[6] Xanax is used to treat anxiety disorders and panic disorders. Dorland's Illustrated Medical Dictionary 55, 2113 (31st ed. 2007) [hereinafter Dorland's].

[7] A cerebral abscess is a collection of immune cells, pus, and other material in the brain, usually from a bacterial or fungal infection. MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/000783.htm (last visited Jan. 27, 2010).

her function report, completed on January 16, 2007, Nieves stated she socialized and got along with other people. See R. 100-01. Nieves also noted she used to take Xanax for stress. R. 102. Her application was denied on March 15, 2007, R. 54-58, and she timely sought a hearing, R. 59-60.

Nieves amended her disability report, stating, as of March 26, 2007, her depression had returned, and she has also been suffering from anxiety. R. 111. Since then, Nieves has been regularly treated by therapist, Fernando Rivas, and psychiatrist, Dr. Pramod Pilania. See R. 176-212, 220-22.

In his initial biopsychosocial evaluation of Nieves, Rivas noted Nieves' anxious behavior, lack of sleep, frequent mood swings, lack of self-confidence, poor memory, social withdrawal, isolation, and poor interpersonal interaction R. 177, 186. Rivas assigned Nieves a provisional diagnosis GAF score of 60. R. 186.

Dr. Pilania evaluated Nieves on April 14, 2007 and noted Nieves looked older than her stated age, R. 187, and diagnosed Nieves with depression, anxiety, and a GAF score of 50, R. 192. He recommended Nieves continue with therapy and prescribed Ambien.[8] R. 192.

Therapy notes consistently report Nieves' nervousness, depression, constant anxious behavior, frequent mood swings, isolation, low self-esteem, and lack of motivation. See, e.g., R. 195, 205, 207, 208, 212. Nieves stated she had issues being around many people, R. 202, and a May 16, 2008 therapy note acknowledges her problem of "not trust[ing] people around me." R. 220.

---

[8] Ambien is used for the short-term treatment of insomnia. Dorland's at 58, 2120.

Throughout her psychotherapy treatment, Dr. Pilania has diagnosed Nieves with depression, major depressive disorder, and anxiety. See, e.g., R. 200, 203, 208, 221, 222. Although Dr. Pilania has noted Nieves has been stable in treatment notes, Nieves has still been diagnosed with depression. R. 202 (July 11, 2007 note stating Nieves was stable and diagnosed with depression); R. 221 (March 22, 2008 note stating Nieves was stable with no complaints except family stressors and diagnosed her with anxiety and major depressive disorder, noting Nieves' mood and energy were down). Nieves has been taking Ambien, Lexapro, Prozac, and Klonopin for her depression and anxiety. See, e.g., R. 44, 194, 203, 221.

On December 27, 2007, a Behavior Health Assessment was conducted by Licensed Social Worker, Inez Quick-Evans, for the Maximizing Participation Project ("MPP")[9] Assessment Program. Quick-Evans noted Nieves was nervous, her hands were shaking, had dark circles under her eyes, and appeared older than her age. Quick-Evans diagnosed Nieves with major depressive disorder and generalized anxiety disorder, and assigned a GAF score of 50. R. 218.

A hearing featuring testimony from Nieves and vocational expert James H. Earhart was held on June 10, 2008, R. 26-51. At the hearing, Nieves testified that her hands shake from her anxiety, see R. 47-48, she gets along with people okay, sometimes gets along with her neighbors, and sometimes has difficulty making or keeping friends, see R. 39-40. In his testimony, Earhart acknowledged a GAF score of 50 would not allow for sustained employment. R. 50.

---

[9] MPP is designed to assist individuals who receive Temporary Assistance for Needy Families "with the opportunity, tools and services needed to move toward self-sufficiency through a variety of social and health-related services, intensive case management, education, training and ultimately employment opportunities." See DPW Cash Assistance Handbook, Ch. 135, Appx. H, available at http://www.dpw.state.pa.us/oimpolicymanuals/manuals/bop/ca/135/135_H.htm#P19_107.

Nieves' claims were denied again on July 8, 2008. R. 14-25. The ALJ applied the five-step sequential analysis[10] to determine Nieves' disability claim. R. 15-24. At step one, the ALJ found Nieves did not engage in substantial gainful activity at any time since the alleged onset of her disability. R. at 16. At step two, the ALJ found Nieves suffered from the following severe combination of impairments: a back disorder, right hearing loss, status post cerebral abscess, a left ankle disorder, obesity, and a mood disorder. R. 16. At step three, the ALJ found Nieves' impairments or combination of impairments did not meet, or medically equal, one of the listed impairments.[11] R. 17-20. In analyzing whether Nieves met an affective disorder listing, the ALJ

---

[10] The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified 20 C.F.R. § 416.920. These steps are summarized as follows:

Step One: If the claimant is working and the work is substantial gainful activity, a finding of not disabled is directed. If not, proceed to Step Two. 20 C.F.R. § 416.920(a)(4)(I).

Step Two: If the claimant is found not to have a severe impairment, or severe combination of impairments, which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, proceed to Step Three. 20 C.F.R. § 416.920(a)(4)(ii).

Step Three: If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. If not, proceed to Step Four. 20 C.F.R. § 416.920(a)(4)(iii).

Step Four: If the claimant retains the RFC to perform past relevant work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step Five. 20 C.F.R. § 416.920(a)(4)(iv).

Step Five: The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant can adjust to other work or is disabled. 20 C.F.R. § 416.920 (a)(4)(v).

[11] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants

6

stated her GAF score was 50-60, Nieves was treated with medication and psychotherapy, and "the psychotherapy notes merely documents her subjective complaints with no real clinical analysis or intensive treatment." R. 18. The ALJ also noted Nieves did not mention a psychological disorder at the time of the consultative examination in February 2007. R. 18. The ALJ also found Nieves has "no more than a moderate degree of limitation in [social functioning]" because Nieves stated in her initial application that she gets along with everyone, and testified that she generally gets along with neighbors and her family. R. 19.

The ALJ then found Nieves had the RFC

> to perform the exertional demands of light level work . . . limited to simple, routine . .. tasks[] not performed in a fast paced environment, secondary to moderate limitations in concentration, persistence, and pace[,] . . . [with] no more than occasional contact with coworkers or the public, [and] secondary to moderate limitations in social functioning.

R. 20.

In analyzing Nieves' mental impairments, the ALJ did not find Nieves' assertions fully credible because he found there was no objective medical evidence that Nieves' mental impairments would prevent her from working. R. 21. The ALJ twice stated Nieves did not report any psychological problems at the time of her initial SSI application; and noted Nieves did not begin treatment for her psychological problems until after the initial denial

---

whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. Id.; see 20 C.F.R. § 416.925(a) (purpose of the listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"). The listing was designed to operate as a presumption of disability making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

of her SSI application, the Social Security field office interviewer did not mention Nieves had any psychological problems, and the record did not contain a state agency assessment of her mental limitations. R. 21-22. The ALJ also considered Nieves' MPP Assessment Program report, but found the report to be based on Nieves' subjective complaints and lacked objective clinical or laboratory findings to support the conclusion that Nieves cannot work. R. 22.

At step four, the ALJ found Nieves was unable to perform any past relevant work, R. 23, but at step five, the ALJ determined there are a significant number of jobs in the national economy Nieves could perform based on her age, education, work experience, and RFC, R. 23-24. The Appeals Council denied review on August 27, 2008. R. 1-3.

## DISCUSSION

I.      Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Diaz, 577 F.3d at 503; Rutherford, 399 F.3d at 552. "Substantial evidence is 'more than a mere scintilla.'" Diaz, 577 F.3d at 503 (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Diaz, 577 F.3d at 503. I may not weigh the evidence or substitute my own conclusions for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and

reconciliation of conflicting expert opinions. Diaz, 577 F.3d at 506. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently. Fargnoli, 247 F.3d at 38. At the same time, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability." Reefer, 326 F.3d at 379 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's applications of legal principles." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, S.J.) (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it supported by substantial evidence. Id. (citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; Diaz, 577 F.3d at 503 (citing Burnett, 220 F.3d at 118). The claimant satisfies her burden by showing an inability to return to her past relevant work. Rutherford, 399 F.3d at 551. Once this showing is made, the burden shifts to the Commissioner to show the claimant, given her age, education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 416.920; see Rutherford, 399 F.3d at 551.

II.   Nieves' Claims

   A.   The ALJ Failed to Address Nieves' Treating Physician's Opinion and GAF Scores

The ALJ has the duty to evaluate all relevant evidence in the record. Fargnoli, 247 F.3d at 41; Burnett, 220 F.3d at 121; Cotter v. Harris, 642 F.2d 700, 704, 706 (3d Cir. 1981). The ALJ may not make speculative inferences from medical evidence, see e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz, 577 F.3d at 505. Therefore, the ALJ must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects, id. at 505-06; Cotter, 642 F.2d at 705-06, so the reviewing court can determine if significant probative evidence was improperly rejected or simply ignored, Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 706-07.

The ALJ may not ignore medical evidence in favor of his own conclusions. Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983). A treating source's[12] opinion is entitled to controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. A treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). The opinion may be accorded "more or less weight depending upon the extent to which

---

[12] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient. 20 C.F.R. § 416.902. A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." Id.

10

supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286). Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the treating, non-treating, and non-examining sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. § 416.927(d). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports," and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Further, although a claimant's GAF score does not have a "'direct correlation to the severity requirements,' . . . [the GAF score] remains the scale used by mental health professionals to 'assess current treatment needs and provide a prognosis.' [Therefore, the GAF score is] medical evidence . . . and must be addressed by an ALJ in making a determination regarding a claimant's disability." Colon, 424 F. Supp. 2d at 812 (quoting 66 Fed. Reg. 50746, 50764-65 (2000)); see also Dougherty, 2006 WL 2433792, at *8.

Failure to discuss a GAF score that supports serious impairments in social or occupational functioning requires remand. See Holmes v. Barnhart, 2007 WL 951637, at *11 (E.D. Pa. Mar. 26, 2007) (Pratter, J.) (remand required because ALJ's failure to acknowledge claimant's GAF score of 50); Escardille v. Barnhart, 2003 WL 21499999, at *6-7 (E.D. Pa. June 24, 2003) (Giles, C.J.) (remand required because ALJ opinion did not evidence he seriously considered claimant's GAF score of 50). The ALJ must demonstrate he seriously considered and

11

weighed the importance of the GAF scores. See Colon, 424 F. Supp. 2d at 813; Span v. Barnhart, 2004 WL 1535768, at *4, *6, *7 (E.D. Pa. May 21, 2004) (Baylson, J.). If the ALJ discounts the GAF score, he must specify his reasons for discounting this evidence. Dougherty, 2006 WL 2433792, at *10; Span, 2004 WL 1535768, at *7 (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)); see Diaz, 577 F.3d at 505-06. Moreover, the ALJ may not "cherry-pick" higher GAF scores in his analysis and ignore GAF scores that may support a disability. See Colon, 424 F. Supp. 2d at 813; Dougherty, 2006 WL 2433792, at *10 n.11.

Since March 27, 2006, Nieves has been treated by Dr. Pilania and Rivas for depression and anxiety. See R. at 176-212, 220-22. Treatment notes demonstrate Nieves suffers from nervousness, depression, anxiety, frequent mood swings, isolation, low self-esteem, and lack of motivation, see, e.g., R. 195, 205, 207, 208, 212, and has been treated with therapy and Ambien, Lexapro, Prozac, and Klonopin, see, e.g., R. 44, 194, 203, 221. On March 27, 2006, Rivas assigned Nieves a preliminary GAF score of 60, R. 186; on April 14, 2007, Dr. Pilania diagnosed Nieves with a GAF score of 50, R. 192; and on December 27, 2007, Quick-Evans assigned Nieves with a GAF score of 50, R. 218.[13]

The ALJ glossed over these contradictory findings in analyzing Nieves' mental impairments. He simply lumped the Rivas' preliminary GAF score with Dr. Pilania's and Quick-Evans' GAF scores, stating "[Nieves'] assessed . . . GAF score . . . was 50-60," and noted that a GAF score from 41 through 50 indicates serious impairment; and a score from 51 through 60

---

[13] Although Rivas and Quick-Evans are not considered treating sources, see 20 C.F.R. §§ 416.902, 416.913(a), I discuss their GAF score assessments because the ALJ considered these scores in his opinion, see R.18; see also 20 C.F.R. § 416.913(d)(1) (opinions of therapists and licensed social workers may be considered in determining the severity of claimant's impairments and how it affects claimant's ability to work); R. 22.

indicates only moderate impairment. R. 18. The ALJ did not address the fact that Nieves had two GAF scores of 50, and he gave no explanation for discounting the significance of Nieves' GAF scores. Moreover, the ALJ mischaracterized Nieves' GAF scores by lumping them together. See Hendrickson v. Astrue, 2008 WL 3539621, at *4 (E.D. Pa. Aug. 11, 2008) (Giles, J.). A GAF score of 50 indicates serious symptoms, such as suicidal ideation, or any serious impairment in occupational, school, or social functioning, while a GAF score of 51 through 60 indicates moderate symptoms, such as circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning. DSM IV-TR at 34.

The ALJ also dismissed therapy notes, the MPP assessment, and Dr. Pilania's diagnoses by stating "the psychotherapy notes merely document [Nieves'] subjective complaints, with no real clinical analysis or intensive treatment;" Nieves is treated with medication and psychotherapy; and current notes show that Nieves is stable with no complaints except family stressors. R. 18. The ALJ's analysis, however, ignores a diagnosis by a treating psychiatrist, a critical fact beyond mere notes of subjective complaints by a patient.

The ALJ further supported his findings citing Nieves' initial disability application that states she gets along with other people, R. 19; the fact that Nieves did not begin psychological treatment until after the initial denial of her SSI claim, R. 21-22, noting there is no State agency assessment of her mental limitations, R. 22; and Nieves did not mention a psychological disorder at the time of her consultive examination, R. 18.

The ALJ failed to support his conclusion that Nieves' mental impairments are "no more than a moderate degree of limitation in [social functioning]" with contradictory medical

13

evidence, such as clinical or laboratory findings,[14] see Plummer, 186 F.3d at 429; R. 19. The consultive examination cited by the ALJ did not mention a psychological disorder because the examination took place in February 2007, R. 18, -- more than a month before Nieves claimed she began suffering from depression and anxiety, see R. 111 (Nieves claims depression and anxiety started March 26, 2007). Although Dr. Pilania noted on March 22, 2008 that Nieves was stable with no complaints except family stressors, Dr. Pilania nevertheless diagnosed Nieves with anxiety and major depressive disorder, noting Nieves' mood and energy were down the same day. R. 221. The ALJ correctly noted Nieves' initial disability application states she gets along with other people, R. 19, see also R. 100-01. However, the ALJ failed to reconcile that Nieves' depression and anxiety began after her initial disability application, her issues being around many people, R. 202, and a May 16, 2008 therapy note stating she has a problem of "not trust[ing] people," R. 220. It is improper to draw inferences about Nieves' symptoms or impairments based on the timing of her alleged impairment and decision to seek mental health treatment. See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003).[15] Nieves did not experience depression and anxiety until March 26, 2007, after her SSI application was initially denied. See R. 54-58, 111. Accordingly, the ALJ was required to explain his reasons for discounting the determination of treating medical sources that Nieves' mental health had deteriorated after March

---

[14] The ALJ's claim that Nieves fails to support her mental impairments with objective medical evidence, despite all of her medical records of psychotherapy, suggests the ALJ had a duty to develop the record by obtaining a state agency assessment of her mental limitations. See Holmes, 2007 WL 951637, at *7 (claimant and ALJ share the burden to develop the record, which may require the ALJ to order a consultative medical expert).

[15] Moreover, as Dr. Pilania noted, Nieves' mental health issues did not suddenly emerge after denial of her benefits on March 15, 2002. Nieves had a history of treatment since the age of 18. See R. at 139, 144, 185.

2007, as corroborated by the GAF scores, prescription medication, multiple diagnoses, and ongoing mental health therapy.[16]

Because of the ALJ's incomplete evaluation of Nieves' GAF scores and failure to thoroughly review and analyze the medical findings of Dr. Pilania, I find the ALJ's decision was not based on substantial evidence. See Diaz, 577 F.3d at 505-06; Plummer, 186 F.3d at 429; Colon, 424 F. Supp. 2d at 807, 815.

B.  Nieves' Additional Claims

Nieves also alleges the ALJ failed to: (1) properly evaluate whether Nieves met a listed impairment; (2) properly determine Nieves' RFC; (3) properly evaluate Nieves' credibility; and (4) incorporate all of Nieves' credibly established limitations in his hypothetical question to the vocational expert. See Plaintiff's Brief at 5-21.

Because I recommend Nieves' case be remanded for the ALJ's failure to consider and analyze all relevant medical evidence regarding Nieves' mental impairments, including GAF scores, it is unnecessary to examine Nieves' additional claims. A remand may produce different results on these claims, making discussion of them moot. See Steininger v. Barnhart, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (Baylson, J.) (not addressing additional arguments because ALJ may revise his findings after remand). For example, review of Nieves' GAF scores could impact whether Nieves meets a listed impairment. See Watson v. Astrue, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (Diamond, J.).

Accordingly, I make the following:

---

[16] Thus, contrary to the Commissioner's suggestions, see Defendant's Response to Request for Review of Plaintiff at 9-10, Nieves v. Astrue, 08-5178 (E.D. Pa. Nov. 20, 2009), Nieves' mental health impairment is not based solely on GAF scores.

# R E C O M M E N D A T I O N

AND NOW, this 29th day of January, 2010, it is respectfully recommended that Nieves' request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this report and recommendation. The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 364 (3d Cir. 2007).

        BY THE COURT:


        \s\ TIMOTHY R. RICE
        TIMOTHY R. RICE
        UNITED STATES MAGISTRATE JUDGE